CHRIS D. KUHNER, ESQ. (Bar No. 173291)
**KORNFIELD, NYBERG, BENDES, KUHNER & LITTLE P.C.**
1970 Broadway, Suite 600
Oakland, California 94612
Telephone: (510) 763-1000
Facsimile: (510) 273-8669
Email: c.kuhner@kornfieldlaw.com

Attorneys for Creditor Southlight Funding, LLC

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>Kuldeep Singh and Amandeep Kaur,<br><br>Debtor. | Case No. 20-41448 RLE<br><br>Chapter 11<br><br>**MOTION FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE**<br><br>Date: December 16, 2020<br>Time: 2:00 p.m.<br><br>**TO BE HELD TELEPHONICALLY, OR VIA VIDEO, WHERE APPROVED AND APPLICABLE** |

Southlight Funding, LLC ("Southlight") hereby moves this court for the appointment of a Chapter 11 trustee pursuant to 11 U.S.C. Section 1104.

### I.   FACTUAL BACKGROUND

On September 2, 2020, debtors Kuldeep Singh ("Debtor") and Amandeep Kaur ("Co Filing Spouse") (collectively the "Debtor") filed for protection under Chapter 11 of the bankruptcy code. The Debtors' main asset is a 54-acre piece of property with nine (9) separate parcels (the "Property"). Eight (8) of the parcels are undeveloped acre lots. The remaining parcel is a 42-acre parcel which includes the Debtors' residence. The Debtors' value the Property at $5 million

dollars as set forth in their schedules.

Southlight is the holder of the first deed of trust on the Property and is currently owed $3,200,681. In addition, there are additional junior lienholders recorded against the Property in violation of the loan agreement with Southlight. Those junior lienholders are set forth below:

| Position | Lienholder | Amount |
|---|---|---|
| 2nd | Kamaljit Mann | $500,000 |
| 3rd | Arun Mohindra | $1,525,980 |
| 4th | Arun Mohindra | $50,000 |
| 5th | Surinder Singh | $501,000 |
| 6th | Virsa Singh Mall | $100,000 |
| 7th | Rakesh Verma | $377,216 |
| 8th | Gurbasant Singh | $325,000 |
| 9th | Sarbjit Hundal | $325,000 |

**TOTAL LIENS: $6,904,877**

In addition to the above liens, the Internal Revenue Service ($119,305) and the Alameda County Tax Collector ($70,364) have filed tax liens against the Property.

In the Fall of 2019, the Debtors defaulted under the terms of the loan agreement by failing to pay the monthly payment due to Southlight. On March 3, 2020, Southlight recorded Notice of Default. On August 6, 2020, Southlight recorded a Notice of Trustee Sale which set a foreclosure sale date of September 3, 2020. The filing of this case stayed the foreclosure sale.

Prior to filing of the bankruptcy case, the Debtors were operating an illegal dirt dumping business charging customers to illegally dump dirt onto the Property. As a result of this illegal dumping and associated illegal grading (or lack thereof), the State of California and County of Alameda brought a lawsuit against the Debtor in Alameda County Superior Court, Case No. RG19042094. See a copy of the Complaint for Injunctive Relief, Declaratory Relief, Abatement of a Public Nuisance, and Civil Penalties ("Nuisance Complaint") attached as **Exhibit A** to the Declaration of Chris D. Kuhner filed in support hereof. As alleged, the Debtor has a history of

ignoring laws and legal notices to cease and desist and floated the law in order to run an illegal business. Apparently, the illegal dumping was on a very large scale and generated significant revenue for the Debtor. See the Application for Temporary Restraining Order to Show Cause Re Preliminary Injunction, the Declaration of Kuldeep Singh in Support of Opposition to Order to Show Cause re Preliminary Injunction, and Reply In Support of Motion for Preliminary Injunction attached as **Exhibit B, Exhibit C** and **Exhibit D** to the Declaration of Chris D. Kuhner filed in support hereof.

Page 3, lines 19-25 of the Reply In Support of the Motion for Preliminary Injunction, references a July 20, 2020 declaration of the Debtor whereby he admits that he has illegally dumped over four thousand (4000) truckloads on the Property and has generated $444,600 in revenue from six (6) trucking companies. There is no disclosure of the revenue in the Debtor's Statement of Financial Affairs so it is unknown where this money went. Since the Property is an asset of this bankruptcy case, any revenue generated from it use should be paid to the estate.

On November 14, 2019, the Court issued a Temporary Restraining Order, a copy of which is attached as **Exhibit E** to the Declaration of Chris D. Kuhner filed in support herewith. July 24, 2020, the Superior Court issued a Preliminary Injunction against the Debtor preventing any dumping or grading on the Property.

In addition to the lawsuit brough by the state of California and the County of Alameda, the Debtor has recently been sued by Norm Wilcoxson, a thirty three percent (33%) owner with the Debtor in KN Investment & Development, LLC ("KN"). KN is one of the Debtor's business he uses for construction projects, including the Property. Attached as **Exhibit F** is a true and correct copy of the Complaint for: Breach of Fiduciary Duty; Accounting; Breach of Contract; Negligence; Constructive Trust, Intentional Misrepresentation; Elder Abuse/Financial Abuse, Intentional Infliction of Emotional Distress; and Negligent Infliction of Emotional Distress ("Wilcoxson Complaint"). The Wilcoxson Complaint contains a cause of action of constructive trust which is support by allegations of financial fraud which if establish may provide a basis to impose a constructive trust as to the Property. In addition, this lawsuit may very well negatively impact the ability of the Debtor to utilize KN to perform services to develop the Property.

At the meeting of creditors, the Debtor confirmed that the eight (8) undeveloped parcels do not have water and sewer connections. In addition, the Debtor acknowledged that without the sewer and water hookup, the individual parcels could not be sold for an amount sufficient to pay off the lienholders. In addition, the Debtor also posits that in order to obtain the sewer and water hookup, the Property would have to be annexed by the City of Pleasanton from the County of Alameda since the County of Alameda is refusing to allow the authorization to connect sewer and water.

Southlight is in receipt of a letter from Peter MacDonald dated September 22, 2020 which was sent to the Debtor care of one of the Debtor's construction companies setting forth the timeline and the description of the events that would need to take place for the Property to be annexed. See **Exhibit G** to the Declaration of Chris D. Kuhner filed in support herewith. In the letter, Mr. McDonald estimates that the time frame to complete all the necessary tasks to annex the properties is 24 to 27 months. This was confirmed by the Debtor at the meeting of creditors as well.

Initially, the Debtor testified that he believed that the cost to connect the sewer and water would be approximately $250,000, but at the continued meeting of creditors, he indicated that it would be $150,000. The Debtor has no money and no ability to fund any development of the Property and has relied on "friends and family." The Debtor does not have money and does not presently intend to make any payments to Southlight or any secured lenders on the Property.[1]

Southlight has been in discussions with at least two (2) other junior lienholders who both are supportive of this motion to appoint a trustee.

## II. LEGAL ARGUMENT

11 U.S.C. Section 1104(a) provides that "at any time after the commencement of the case but before confirmation of a plan . . . the court shall order the appointment of a trustee (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the

---

[1] Southlight is currently in the process of obtaining transcripts of the two (2) meeting of creditors. Due to the COVID restrictions, obtaining audio files directly from the U.S. Trustee has been difficult. Southlight intends to file the transcripts once they are obtained through a third party transcriber. Southlight anticipates filing those transcripts the week of November 9, 2020.

debtor by current management . . ." 11 U.S.C. Section 1104(a)(1). In addition, the appointment of a trustee should be made when its in the interest of creditors. 11 U.S.C. Section 1104(a)(2) The moving party need only prove one of the two statutory basis. See *In re SonicBlue, Inc.,* 2007 Bankr. LEXIS 1057, *31 (Bankr.N.D.Cal. March 26, 2007) Southlight contends that the pertinent facts and circumstances in this Chapter 11 case warrant the appointment of a trustee under both Sections 1104(a)(1) and (2).

**A. Cause Exist Because the Debtor Does Not Have a Viable Plan to Pay Creditors.**

The appointment of a chapter 11 trustee due to "debtor's inability to formulate a business plan, make operating projections which have a longevity of more than several months, along with continuing enormous operating losses being sustained by the estate." See *In re Sharon Steel Corp.,* 871 F.2d 1217, 1228 (3d Cir.1989)

In this case, the Debtors have no viable plan. The Debtors have no money or any ability to develop this Property to the point where it will allegedly be sold for an amount sufficient to payoff the secured debt. The Debtor's incompetence in developing the Property is clear. There are nine (9) lienholders on this Property alone, not including loans made by other creditors that are either unsecured or secured by other assets of the Debtor or the Debtor's businesses. The Debtor has a total of $11,245,828 in unsecured non priority debt including over twenty five (25) separate credit cards and a loan for $2,750,000. **See Exhibit H** to the Declaration of Chris D. Kuhner filed herewith.

The Debtors' plan is to spend the next 24 to 27 months to attempt to annex the Property and then connect the water and sewer; none of which the Debtor has any money to do. He proposes that the secured lenders wait the two (2) years and not be paid until this speculative plan comes to fruition. If the Debtor is correct, creditors may get paid but the Debtor gets his home on 42 acres while not having paid a mortgage payment for years! Not only is this unfair allocation of risk (all of it on the lenders and none on the debtor) not a proper use of Chapter 11, it is a transparent attempt by the Debtors to stay in their home without having to pay the underlying debt.

In addition to the financial mismanagement of the Property, the Debtor also has been sued (and the Debtor has filed a counter claim) by the State of California and the County of Alameda

for illegal dumping on the Property. A preliminary injunction has already been entered and there will be a future abatement hearing. It took the State of California and the County of Alameda to bring a nuisance lawsuit and obtain injunctive relief to compel the Debtor to not violate the law, something everyone, especially someone who is a debtor in possession, is required to do.

The lynch pin of the Debtor's "plan" is to have the Property be annexed by the City of Pleasanton from Alameda County. Based on the tenor of the pleadings by the State of California and the County of Alameda, it is clear that any cooperation by the parties is lacking, to say the least. When a party you need to cooperate to accomplish such a lofty goal of annexation is the target of litigation, the chances of a successful outcome are greatly reduced. Regardless of fault, the bottom line is there is no realistic path to reorganization that does not include a two (2) year wait with secured creditors shouldering all the risk while not being paid and no source of funds to pay for this complicated and expensive process.

**B. Appointment of a Chapter 11 Trustee is in the Best Interest of the Estate and All Creditors.**

To determine whether the appointment of a chapter 11 trustee is warranted under Section 1104(a)(2), courts "look at the totality of the circumstances." *In re Pasadena Adult Residential Care,* No. 13-bk-28484-RK, Bankr. LEXIS 3601, *46 (Bankr.C.D.Cal. Oct. 23, 2015)

In addition, the courts eschew rigid absolutes and look to the practical realities and necessities. *In re Ionosphere Clubs, Inc.,* 113 B.R. 164, 170 (Bankr. S.D.N.Y. 1990) These practical considerations include (i) the trustworthiness of the debtor; (ii) the debtor-in-possession's past and present performance and prospects for the debtors rehabilitation; (iii) the confidence, or lack thereof, of the business community and of creditors in the present management; and (iv) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment. *Id.*

In this case, all these factors have been met.

First, the Debtor should not be trusted. The Debtor has already been sued and enjoined for illegally dumping dirt and grading on the Property which may have caused significant damages to the Property itself. The Debtor has apparently obtained loans from friends and families and may not have disclosed sufficiently all of the facts relating to the investment. The Debtor is also

Motion for Appointment of Chapter 11 Trustee -6-
Case: 20-41448    Doc# 41    Filed: 11/06/20    Entered: 11/06/20 15:02:56    Page 6 of 8

involved in litigation with a former partner who has alleged very serious allegations of financial fraud and is attempting to obtain ownership/control of various assets, including the Property.

Second, the Debtor's past and present performance and the prospects for the Debtor's rehabilitation favor the appointment of a chapter 11 trustee. As set forth above, there is no viable plan moving forward other than a two (2) year delay without payments to the creditors with a largely speculative goal of annexing the Property in hopes the City of Pleasanton will then approve the project. This assumes the significant issues the State of California and the County of Alameda raised which has put a halt to the development will be ignored by the City of Pleasanton.

Third, the confidence, or lack thereof of the business community and the creditors in the present management favor the appointment of a trustee. As set forth above, Southlight as well as the other lienholders, the State of California and County of Alameda have no confidence in the Debtor and view this bankruptcy as a latest delay tactic to try to "pull a rabbit out of a hat" on the backs of secured creditors.

Fourth, the benefits derived by the appointment of a trustee, balance against the cost of the appointment of a trustee favor the appointment of a trustee. Right now, the Property is significantly under water by millions of dollars with every day eroding any "equity" junior Southlight. Southlight will agree to carveout from its lien an amount to pay the cost of a chapter 11 trustee to be negotiated with any chapter 11 trustee to ensure that the trustee has sufficient resources to at least initially investigate the Debtor and the viability of any plan going forward. Southlight is not asking that it be given a relief from stay to foreclose or cutting off the option to have a plan of reorganization proceed. Rather, a chapter 11 trustee should be appointed to initially do two (2) basic things. First, the trustee should determine whether there is a viable plan to develop this Property and to obtain the necessary sewer and water connections to sell the Property at the highest value to pay all creditors. Second, if there is no viable plan, the trustee should then determine whether the Property can be sold as-is or if some work has be done to make it more saleable, a likely event due to the Debtor's mismanagement of the Property. By working with the secured lenders, Southlight is confident that to the extent the Property is not sold for an amount to payoff all lienholders, that the lienholders will come to an agreement and take less than what they

are owed in order to make sure the Property is sold in the Chapter 11 case.

### III. CONCLUSION

Based on the foregoing, Southlight requests that this court order the appointment of a chapter 11 trustee.

Dated: November 6, 2020

Kornfield, Nyberg, Bendes, Kuhner & Little, P.C.

By: /s/ Chris D. Kuhner
(Bar No. 173291)
Attorneys for Creditor Southlight Funding, LLC